[No. 7264. Decided October 27, 1908.]

ANNIE SECOMBE, *Respondent*, v. CARRIE J. FULLER, *Appellant*.[1]

VENDOR AND PURCHASER — CONTRACT TO CONVEY — PERFORMANCE— WAIVER OF TIME LIMIT—SPECIFIC PERFORMANCE. There is a waiver of the thirty-day time limit for perfecting title to land agreed to be sold, rendering the contract binding on the vendor and subject to specific performance, where it appears that a corrective deed was required from an eastern party, which the vendor wrote for, and upon answer being received that the party was dead but that steps would be taken to secure a correction through court proceedings, the vendor acquiesced in the statement of her agent that the only thing to do was "to wait until the deed comes," which could not be within the thirty days; that correspondence was had with reference to securing the deed, and no return of earnest money paid to the vendor was tendered to the vendee for sixty days, who refused to receive it, or accept a part only of the land; and the vendee tendered the full price as soon as she learned of the arrival of the corrective deed.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered December 18, 1907, upon findings in favor of the plaintiff, after a trial before the court, in an action for specific performance of a contract to convey land. Affirmed.

*C. M. Easterday*, for appellant.

*Ellis, Fletcher & Evans* and *Harry H. Johnston*, for respondent.

ROOT, J.—This is an appeal from a judgment and decree. of specific performance entered against appellant in the trial court. On the 18th day of June, 1906, appellant, by her agent, G. D. Grant, entered into a written agreement for the sale to respondent, for $1,000, of the premises in controversy, being a tract of land 12.8 rods by 25 rods, the agreement being in form of a receipt for $100 earnest money, and de-

[1]Reported in 97 Pac. 805.

scribing the property and containing the terms and conditions of the sale and containing the following provision:

"If said abstract does not show such title, or cannot be made to do so within 30 days from notice of defects, then this agreement to be void, and all payments hereunder shall be refunded. Otherwise, if the purchaser refuses to complete the purchase in accordance with the terms hereof, all payments made shall be forfeited as commissions and compensation for examining property, abstracts and papers; but such forfeiture shall not impair the right of either party to pursue the usual remedies for breach of this contract."

An abstract was furnished by appellant to respondent within a few days, which revealed that, by inadvertence or mistake, appellant's grantor in the description of the property in her deed to appellant had omitted a strip of land nine feet in width from the east side of the tract in question. This grantor was one Mary R. Wolfe, who was supposed to be living in some eastern state. Appellant caused a letter to be immediately sent to the former address of said Mary R. Wolfe, and received an answer thereto in due course, from her brother, stating that Miss Wolfe was dead, but that steps would be immediately taken by her heirs or legal representatives whereby a proper conveyance should be made of the nine feet of ground omitted as aforesaid. This letter was immediately shown by the agent of appellant, Mr. Grant, to Mr. Johnston, an attorney for respondent, and the latter remarked that there was nothing to do but to wait for the deed. It was evident to both parties that this corrective deed could be obtained, but not within the thirty days mentioned in the receipt. After the expiration of said thirty days, the appellant offered to make a deed to respondent of that portion of the property to which she had title, and to allow a proportionate reduction in the purchase price, but this offer was declined by respondent. Appellant thereafter offered to refund the $100 and terminate the transaction. This offer was also declined by respondent. There is some evidence to

the effect that the $100 earnest money was used by appellant or her agent, and that they were not in a position to refund the same until some time after the thirty days had expired.

In the latter part of July, appellant's agent Grant re-advertised the property for sale. This advertisement coming to the attention of respondent, she caused her receipt to be placed of record. The first offer to refund the $100 appears to have been made on August 21, at which time there was coupled with the offer to return a demand for a quitclaim deed from respondent to remove the cloud occasioned by the filing of her receipt. The corrective deed was received by appellant about February 6, 1907, and a plat subdividing the entire property into lots and blocks was filed by her about four days thereafter. As soon as respondent learned of the arrival of this deed, she tendered to appellant the $900 balance of the purchase price, and demanded the deed of the entire premises. The deed being refused, she instituted this action on or about April 10, 1907, and paid the $900 into court. Two lots were sold by appellant after platting, for the sum of $300. The trial court entered a decree requiring appellant to convey to respondent all of the property except the two lots that had been sold and conveyed. Respondent was credited with $300, the proceeds of the sale of the two lots, and appellant was allowed the sum of $261.16, being expenses incurred in clearing and platting the property and for taxes on the property for the year 1906.

It is the contention of appellant that, when it became evident that appellant's title could not be made good within thirty days from notice of defect, the agreement became absolutely terminated and was no longer in effect as to either party. Respondent contends that the provision as to the agreement becoming void was one for her benefit alone, and that she was privileged to waive the same if she elected so to do. There is a conflict in the authorities upon this question. Some hold that, under an agreement of this kind, there is an absolute termination of all obligations as to each party when

it is definitely ascertained that the title cannot be perfected within the time mentioned. Others hold that a provision of this kind is for the benefit of the vendee; that he may elect to receive back his earnest money and thereby terminate the contract, or he may elect to waive that right and wait until the vendor can perfect his title, even though it is impossible to make such perfection within the period prescribed in the agreement, if it can be done within a reasonable time.

We are not required, however, to pass upon this question, as we believe the evidence shows a waiver by both parties of the time limit. The appellant testified that Mr. Grant was her agent in this transaction, and that she told him to "do anything that is fair and just." There was evidence that she told respondent's agent that whatever Mr. Grant did in the matter would be satisfactory to her (appellant). The agent, who was attending to the matter for respondent at that time, testifies that Mr. Grant brought the letter announcing the death of Miss Wolfe to him, and that when he stated that "the only thing we could do was to wait until the deed comes," Mr. Grant said that was all right, and that such course seemed agreeable to him. Appellant testified that she knew that correspondence was being carried on relative to securing the corrective deed. The earnest money was not returned nor tendered back within the thirty days. It was not tendered until the expiration of about sixty days, and then only upon condition of respondent executing and delivering a quitclaim deed of the premises to appellant. There was also testimony to the effect that in September Mr. Grant suggested to respondent's attorney that the latter write to the brothers of Miss Wolfe, and to do what he could to urge the forwarding of the corrective deed. While there is some conflict in the evidence, and it is not as conclusive as might be desired, yet we think it is made reasonably clear that, that, at the time of the expiration of the thirty days' limit, both of these parties contemplated the continuation of the contract in force

and the securing of the corrective deed. They had been assured by the legal representatives of Miss Wolfe that such deed would be forthcoming in the course of the administration of the estate, and it was doubtless the intention of both parties at that time to await the arrival of the deed and then conclude the deal. In the light of all the evidence bearing upon the conduct of these parties and their agents, we are led to believe that the judgment and decree of the trial court was correct, and it is hereby affirmed.

HADLEY, C. J., MOUNT, and DUNBAR, JJ., concur.